## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| LISA GRAY, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 08-cv-61089 |
| v. | ) ) | |
| MOBILE MESSENGER AMERICAS, INC., a Delaware corporation; one or more JOHN DOES, and one or more JOHN DOE CORPORATIONS, | ) ) ) ) | |
| *Defendants*. | ) ) | |

## PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Lisa Gray, by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 23, respectfully moves this Court for an order granting preliminary approval to a class action settlement in this matter, conditionally certifying the settlement class, authorizing notice to be sent to the members of the class pursuant to the plan detailed herein, appointing class counsel, and scheduling a final approval hearing. In support, the Plaintiff submits the incorporated memorandum of law, stating as follows:

## I.      INTRODUCTION

This proposed class action settlement involves Defendants' alleged practice of charging cellular telephone customers for products and services the customers have not authorized—a practice Plaintiff will refer to as "cramming." Lisa Gray and the named Plaintiffs in several similar class actions against Mobile Messenger[1] have asserted that Defendants' practices have

---

[1] The related class action naming Mobile Messenger are: (a) *Robert Walsh v. Mobile Messenger Americas, Inc. and mBlox, Inc.,* Case No. BC 385961 (Los Angeles County, CA); (b) *Jason and Nancy Batanides v. 2WayTraffic Mobile USA, Inc. and Mobile Messenger Americas, Inc.,* Case

resulted in unauthorized charges to consumers' accounts nationwide and seek recovery of resultant damages.  During the course of this litigation, Defendant Mobile Messenger Americas, Inc., a Delaware corporation ("Mobile Messenger") initiated a dialogue with Class Counsel that led to formal in-person settlement negotiations.

Through their several negotiations, the parties were able to reach an incredibly strong settlement.  (A true and accurate copy of the settlement agreement is attached as Exhibit A).  The settlement provides the class with refunds equal to the amount of all unauthorized mobile content charges.  (If the charge recurred on a monthly basis based on a subscription or similar arrangement, class members may recover up to three times the amount of any such recurring charge).  Mobile Messenger has also agreed to continue and improve its refund policy after having an outside review of its procedures, including offering consumers who call it to unsubscribe to subscriptions for mobile content.  In addition, Mobile Messenger has agreed to remain in compliance with the Mobile Marketing Association's requirements regarding numbers that have been abandoned, which are then "recycled" to new wireless subscribers and may incur charges associated with the previous owner of the phone number.  All told, the settlement terms approach the best plaintiffs could have hoped to achieve at trial.  Given the hurdles facing them in this litigation, the results achieved are well beyond those required to preliminarily approve the settlement.

Plaintiff thus moves the Court to preliminarily approve the instant settlement, certify the settlement class, and appoint Class Counsel as Jay Edelson, Myles McGuire, and Ryan D. Andrews of KamberEdelson LLC and Liaison Class Counsel of David Healy of the Law Office

No. BC392123  (Los Angeles County, CA); and (c) *Louis Jiran and Delores Gresham v. AT&T Mobility, LLC, et al.* , Case No. Civ. A No. 08-00013 (N.D. Cal.).

of David P. Healy.  For convenience, a proposed preliminary schedule of events leading to a final approval hearing (the "Settlement Hearing") is provided in Section VIII of this brief.

## II.    NATURE OF THE LITIGATION

### A.    Gray's Allegations and the Claims in the Related Class Actions

Over the last several years, class actions have been filed throughout the country by consumers challenging the "cramming" practices in the mobile content industry, whereby charges for mobile content are allegedly included in consumers' cellular telephone bills without their authorization.  As alleged in these complaints, though disputed by Mobile Messenger and the other defendants, "cramming" is the result of systematic flaws in billing systems that arose due to the rapid and largely unplanned growth of the mobile content industry.  To provide for the exponential demand of consumers for mobile content, the wireless service providers interact with entities like Mobile Messenger called "aggregators" who act as middlemen between the mobile content providers and the wireless carriers.  Most mobile content providers lack the wherewithal to interact with the large wireless carriers directly.  In addition to fostering these ties, Mobile Messenger is responsible for the actual billing and delivery of mobile content to the consumers via cell phone technology.

The providers of mobile content charge and collect payment from their customers by having Mobile Messenger "piggybacking" those charges on the cell phone bills sent to consumers by the wireless service providers.  Both Mobile Messenger and the wireless carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount each mobile content transaction.  Although Mobile Messenger has implemented consumer protection protocols, Gray and the plaintiffs in the related class actions allege that its billing and collection systems in aid of the premium mobile content industry lack

sufficient checks or safeguards to prevent unauthorized charges from being added to customers' bills from their wireless service providers.

In one of the first such suits against an aggregator broadly challenging the alleged occurrence of "unauthorized charges" for mobile content, Gray's Amended Complaint asserts claims on behalf of a nationwide class of wireless subscribers who suffered damages as a result of being billed for mobile content that was not authorized.  Gray has alleged causes of action for: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*, (2) Restitution/Unjust Enrichment; and (3) Tortious Interference with a Contract.

The additional class actions listed above filed against Mobile Messenger involve similar claims and another involves a subset[2] of the "cramming" flaw, the so-called "recycled numbers" charges.  The recycled numbers case addresses charges that were allegedly unauthorized by the current holder of a wireless telephone number, but were authorized by the former holder of the number before it was abandoned and "recycled" to the current owner.  The proposed settlement would cover the claims asserted in these actions as they relate to mobile content associated with Mobile Messenger customers as well as those alleged in Gray's Amended Complaint.

**B.     Litigation, Investigation, & Settlement.**

Proposed Class Counsel began a wide-ranging investigation into the premium mobile content industry in 2005.  (*See* Declaration of Myles McGuire ¶ 3, a true and accurate copy of which is attached as Exhibit B).  To date, that investigation has resulted in information gathered

---

[2] It should be noted that *In Re Jamster Marketing Litigation*, MDL No. 1751, Master File No. 05-CV-0819 JM (CAB) is presently pending in the United States District Court for the Southern District of California.  That MDL focuses on: (1) the alleged industry practice of targeting mobile content advertisements specifically to minors, who may not have the authority to bind their parents to pay for such services; and (2) the marketing practices of mobile content by Jamster International SARL ("Jamster").  Mobile Messenger has not been named in the MDL and the JPML has recently rejected efforts to transfer general cramming cases into this MDL even where there were overlapping defendants.  (McGuire Decl. ¶ 13).

from over 1,000 aggrieved consumers.  (McGuire Decl. ¶ 4).  It has lead to an exchange of information and litigation strategy with multiple governmental agencies, including the Office of the Florida Attorney General.  (McGuire Decl. ¶ 5).  Class Counsel has received and reviewed numerous documents produced from the Illinois, Maryland, and Florida attorney generals' offices.  (McGuire Decl. ¶ 6).  Class Counsel has also had in-person meeting with both the Florida Attorney General's Office and the California Public Utilities Commission to discuss their relative investigations into unauthorized charges in the mobile content industry.  (McGuire Decl. ¶ 7).  And, most relevant, it has resulted in litigation throughout the country.

This continuing investigation into unauthorized mobile content charges has spawned claims at issue in this lawsuit, the related cases against Mobile Messenger, additional suits across the country filed by Class Counsel against the other aggregators, the wireless service providers, and major content providers.  In the cases naming Mobile Messenger, including this case, procedural motions—such as motions to remand or motions to compel arbitration—have been briefed and/or decided by the courts.  Specifically, in or around January 31, 2008, Verizon Wireless removed the initial Complaint, which alleged only a class of Florida Verizon Wireless subscribers, to this Court asserting jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  However, given the statewide class alleged and the lack of evidence of the amount in controversy, this Court remanded the action on or about April 7, 2008.  Plaintiff's subsequent Amended Complaint asserts state and federal claims on behalf of a nationwide class and Plaintiff has voluntarily dismissed Verizon Wireless as a Defendant.

During the course of litigating these cases, Mobile Messenger contacted Class Counsel and initiated a dialogue about the possibility of beginning settlement negotiations.  (McGuire Decl. ¶ 8).  After their initial call, counsel for the parties held numerous phone conferences,

attended at times by the representative parties, where the Plaintiff's legal theories and Mobile Messenger's defenses were candidly discussed.  (McGuire Decl. ¶ 9; *see also* Declaration of Ryan D. Andrews, ¶ 2, a true and accurate copy of which is attached as Exhibit C).  As a result of these negotiations, Mobile Messenger agreed to produce documents to Class Counsel, provide Class Counsel with unfettered access to its systems, produce its CEO for a deposition, and to meet in-person to further discuss the possibility of settlement.  (McGuire Decl. ¶ 10; Andrews Decl. ¶ 3).

On June 18, 2008, Class Counsel met with Mobile Messenger's outside counsel, Vice President and General Counsel, and CEO in San Francisco, California where they were able to reach an agreement in principle.  (McGuire Decl. ¶ 11; Andrews Decl. ¶ 4).  Only after an agreement as to relief to the class was reached did the parties discuss the issue of attorneys' fees and incentive awards.  (McGuire Decl. ¶ 12; Andrews Decl. ¶ 5).  In the time that followed, Mobile Messenger made available for review substantial documentation of its consumer protection policies, its policies regarding its mobile content provider clients, its financial records detailing its revenue and amounts refunded to consumers, and reports of consumer complaints from the State of Texas.  (Andrews Decl. ¶ 6).  After being permitted to review these documents, Mobile Messenger produced its CEO for a deposition.  (Andrews Decl. ¶ 7-8).  As a result of the above negotiations and investigation, the parties were able to finalize the attached Settlement Stipulation executed on July 11, 2008, for which they now seek preliminary approval.

   C.   **Defendant's Position.**

At all times, Mobile Messenger has denied and continues to deny any wrongdoing whatsoever or that it committed any of the wrongful acts or violations of law that are alleged in the Complaint and Amended Complaint, in this or the related actions and contends that it has

acted properly.  Mobile Messenger also denies that either Gray or the proposed settlement class are entitled to any form of damages as a result of the conduct alleged in the Complaint and Amended Complaint.  Mobile further made clear that it was prepared to vigorously oppose the Plaintiff's claims and class certification.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement follow:

1.    *Class Definition*.  The settlement class is defined as follows:

> Wireless Subscribers Nationwide who, at any time from January 1, 2005, to the Notice Date, were billed and paid for Mobile Content associated with Mobile Messenger.  Excluded from the Class are the following:  the Defendant, the Claims Administrator, and any of aforementioned respective parent, subsidiary, affiliate or control person of the Defendant, as well as the officers, directors, agents, servants, or employees of the Defendant, any trial judge presiding over this case over any of the actions which comprise the Action and/or the Related Actions, and the immediate family members of any such Person(s).

2.    *Individual Class Member Benefits.* Mobile Messenger has agreed to refund all unauthorized mobile content charges associated with it that were billed to wireless subscribers from January 1, 2005 to the notice date. If the charge was recurring on a monthly basis based on a subscription or similar arrangement, the settlement class members may only recover up to three times the amount of any such recurring charge.  To pay these claims, Mobile Messenger will establish a settlement fund of $12,000,000; or, if Court in Georgia gives final approval to a similar settlement regarding unauthorized mobile content charged to current and former AT&T Mobility subscribers, then the settlement fund will be $9,000,000 as those claims will be paid out of that settlement.[3]  To be eligible for any refund, class members must submit a claim form

---

[3]  That settlement received preliminary approval in the action styled *McFerren v. AT&T Mobility LLC,* Fulton County Superior Court Case No. 2008-CV-151322 on May 30, 2008.

stating that, *inter alia*, the charges were unauthorized and not previously refunded to class member's account from any source.  Members of the settlement class members will receive a refund being the lesser of the full amount requested on the claim form or the *pro rata* amount of the settlement fund if amount of claims exceed the amount of the settlement fund.

3.     ***Group Relief and Additional Relief.***  In addition to the individual relief to the settlement class provided above, the Defendant has agreed to provide the following group and other relief.

A.     <u>**Mobile Messenger Service Improvements & Assurances**</u>:  Mobile Messenger has agreed to continue and enhance its refund policy and to allow all wireless subscribers who contact customer service to unsubscribe them from any unwanted mobile content.  As part the enhancement of its refund policy, Mobile Messenger has agreed to contract with an independent company to perform an audit of the procedures used to cancel wireless subscribers' requests to cancel subscriptions for mobile content and for wireless subscribers' requests for refunds of unauthorized charges.  If the audit reveals any systematic flaws in the above procedures, Mobile Messenger will correct those deficiencies.

In addition, Mobile Messenger shall certify that it will remain in compliance with the "recycled" number requirements established by the Mobile Marketing Association ("MMA"), an industry consortium with 450 members, including agencies, advertisers, hand-held device manufacturers, carriers and operators, retailers, software providers, and service providers, in effect as of the Effective Date of this Agreement.

B.     <u>**Payment of Notice and Administrative Fees**</u>:  Mobile Messenger will pay for the cost of sending the settlement class notice and any other notice as required by the Court as well as all costs of administration of the settlement out of the settlement fund.

C.      **Compensation for the Class Representatives:**  In addition to any award under the Settlement, and in recognition of their efforts on behalf of the Class, the class representative in this matter and in each related matter shall, subject to Court approval, each receive an award of $1,000 as appropriate compensation for their time and effort serving as the class representatives in the litigation against the Defendant.

D.      **Payment of Attorneys Fees:**  Defendant has agreed to pay Class Counsel, subject to Court approval, $1,225,000 in both attorneys' fees and for the reimbursement of costs. Mobile Messenger has agreed that this amount is fair and reasonable and that it will not object to, or otherwise challenge, Class Counsel's application for reasonable attorneys' fees and for reimbursement of costs and other expenses.  Class Counsel has, in turn, agreed not to seek more than said amount from the Court.

4.      *Release.*    Upon the effective date of the settlement, the Plaintiff, on behalf of herself and the settlement class, will provide the release of all "Settled Claims" to the "Released Party" as further discussed at the Stipulation of Settlement's Section XII.  (*See* Ex. A).

## IV.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes.  *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (internal quotations omitted).  The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet these prerequisites: numerosity, commonality, typicality, and adequacy of representation.  Fed.

R. Civ. P. 23(a)(1-4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). After meeting the strictures of Rule 23(a), the plaintiff must then demonstrate that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). In determining whether to certify a class, the Court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). In this case, each of the prerequisites are met.

### A.      The Requirement of Numerosity Is Satisfied

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *see also Fabricant*, 202 F.R.D. at 313 (finding that Rule 23(a) requires that joinder be impracticable, not impossible). To satisfy this requirement, there is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable." *Id. Fabricant*, 202 F.R.D. at 313 (citing *Kilgo v. Bowman Transp. Inc.*, 789 F.2d 711, 718 (11th Cir. 1984)). Generally, the numerosity requirement is not met with numbers less than 21, but is satisfied when the class comprises 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). In this case, the proposed class encompasses wireless telephone subscribers across the United States, and Plaintiff estimates their numbers exceed 100,000 persons. Accordingly, the proposed class satisfies the requirement that the proposed class be so numerous that joinder of their claims be impracticable.

### B.      The Requirement of Commonality is Satisfied

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied when there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant*, 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004)

(finding that the commonality requirement is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members").

As alleged in this case, all class members share the common issue of whether they were charged for unauthorized mobile content associated with Mobile Messenger on their accounts with their respective wireless service providers.   This common issue among class members results in common legal questions such as: (1) whether Mobile Messenger's has unjustly received money belong to the Plaintiff and members of the settlement class and whether under principles of equity and good conscience Mobile Messenger should not be able to keep such monies; (2) whether Mobile Messenger tortiously interfered with contracts between the Plaintiff and the settlement class and their respective wireless service providers by causing them to be charged for unauthorized mobile content; and (3) whether Mobile Messenger's conduct violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.  In addition, common questions for the settlement include whether the settlement is fair and what is the proper form of notice.  The commonality requirement is therefore met.

### C.    Plaintiff's Claims Are Typical of The Claims of the Class

Rule 23 next requires that class representatives have claims that are typical of those of the putative class members.  Fed. R. Civ. P. 23(a)(3).  "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted).  Gray's claims are typical of the claims of the class because they "arise from the same event or pattern or practice and are based on the same legal theory."  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.,* 390 F.3d 695, 714 (11th Cir. 2004)(finding that "[n]either the typicality nor the commonality requirement mandates that all

putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification." In fact, "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Cooper*, 390 F.3d at 714 (finding that named representative need only share the same "essential characteristics" of the larger class). Simply put, when the same unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

In this case, the Plaintiff and the proposed class members were equally charged for unauthorized mobile content associated with Mobile Messenger as a result of a common course of conduct. Mobile Messenger, in its role as "middleman" between the content providers and the wireless service carriers, facilitated the billing of these allegedly unauthorized charges to the Plaintiff and each of the class members. As a result of this conduct, the Plaintiff and the proposed class being damaged in a nearly identical manner. Accordingly, the Plaintiff's claims are typical of those of the class.

### D.    The Requirement of Adequate Representation is Satisfied

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates both that: (1) the class representative possesses no interests antagonistic to the settlement class, and (2) class counsel is competent. *Fabricant*, 202 F.R.D. at 314-315 (citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

In this case, Gray has the same interests as the proposed class members—all have been wrongfully billed for mobile facilitated by the Defendant. Therefore, Gray has no interests

antagonistic to the interests of the proposed class.  Further, Class Counsel are well respected members of the legal community, have regularly engaged in major complex litigation, have had extensive experience in consumer class action lawsuits involving cellular telephone technology that are similar in size, scope and complexity to the present case.  (*See* Exhibit D, resumes of Class Counsel).  Accordingly, both Gray and her counsel will adequately represent the class.

### E.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Once the subsection (a) prerequisites are satisfied, the Federal Rules of Civil Procedure further require that that one of the three requirements of Rule 23(b) be satisfied.   Rule 23(b)(3) provides that a class action can be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy.[4]   Fed. R. Civ. P 23(b)(3). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis."  *Agan*, 222 F.R.D. at 700.

In this case and in the context of the proposed settlement, common issues of fact and law predominate.  Mobile Messenger's practice of facilitating the billing of allegedly unauthorized charges to wireless telephone customers is common to each class member's claims and damages. The only real distinction among class members is the number of unauthorized mobile content

---

[4] Although the proposed settlement includes certain injunctive components, certification of an injunctive class under Rule 23(b)(2) would be improper.  *Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671, 682 (S.D. Fla. 2007) (finding that "where, as here, plaintiffs seek money damages in addition to equitable relief, Rule 23(b)(2) certification is only appropriate if the money damages are incidental to the requested injunctive or declaratory relief. Money damages are incidental only when class members would be automatically entitled to them once class-wide liability is established.") (internal quotations and citation omitted).

they were charged and paid.  However, such variations do not defeat class certification, because the exact amount of damages is invariably an individual question.  *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).

In addition, the instant class action is superior to any other method available to fairly and efficiently adjudicate the class members' claims.  "The inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'"  *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1359 (11th Cir. 2002)).  Class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 700 (S.D. Fla. 2004) (internal citations omitted); *Amchem,* 521 U.S. at 615 (stating that the "very core of the class action mechanism is to overcome the problem that small recoveries do not provide an incentive for any individual to bring a solo action prosecuting his or her rights").

In this case, absent a class action, most members of the class would find the cost of litigating their claims—the Plaintiff was charged $19.99 for allegedly unauthorized mobile content—to be prohibitive and such multiple individual actions would be judicially inefficient.  Also, because the action will now settle, the Court need not consider issues of manageability relating to trial.  *See Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial").  Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

**V.     THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL**

Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed Class Counsel has extensive experience in prosecuting class actions and other complex litigation of a similar nature, scope, and complexity. (*See* Exhibit D). Proposed class counsel has intimate knowledge of the law in this field and has been a pioneer in the field of consumer class actions involving cellar telephone technology. Further, proposed class counsel has diligently investigated, prosecuted, dedicated substantial resources to the investigation of the claims at issue in the action, and has successfully negotiated the settlement of this matter to the benefit of the class. Accordingly, the Court should appoint Plaintiffs' counsel to serve as class counsel for the proposed class pursuant to Rule 23(g).

## VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court." The procedure for review of a proposed class action settlement is a well-established two-step process. Alba & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* David F. Herr, *Annotated Manual for Complex Litigation,* § 21.632 (4th ed. 2004). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (quoting *Manual for Complex Litigation*, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008); *Fresco v. Auto Data*

*Direct, Inc.,* 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 (stating that "[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement." (internal quotations omitted). The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd,* 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc v. Claires Stores, Inc.*, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993). While this Court has discretion regarding the approval of a proposed settlement, it should give proper deference to the private consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation"). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and

reasonable and not the product of collusion. *Bennett v. Behring*, 737 F. Supp. 982, 986 (11th Cir. 1984); *Access Now,* 2002 WL 1162422 at *4.  When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements."  *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In determining whether the instant proposed settlement is "fair, adequate, and reasonable," the following factors are often considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring*, 737 F. Supp. at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 1329. Finally, in considering the preliminary approval need not "reach any ultimate conclusions on the issues of fact and law underlying the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

In this case, there is no question that the proposed settlement is both "fair, adequate, and reasonable" and "within the range of possible approval."  The fairness, reasonableness, and adequacy of this settlement are apparent from the virtually full reimbursement of all allegedly unauthorized charges, the service improvements and assurances from Mobile Messenger, and the agreement of the parties' experienced counsel after arms' length negotiation.  Specifically, class members will receive full reimbursement of all allegedly unauthorized charges—subject to a three-month limit on charges arising from a subscription—or their *pro rata* share of a common fund that will be either $9 or $12 million depending on the final approval of the related AT&T Settlement's final approval.  In addition, a final agreement was only reached in this matter after several sessions, including in-person meetings, and only after the review of thousands of pages

of documentation and the deposition of Mobile Messenger's CEO.  Although Plaintiff's counsel is confident in the strength of the claims alleged in the Complaint and that they would ultimately prevail at trial, their experience imparts the wisdom that litigation is inherently risky.  When the strengths of the Plaintiff's claim are weighed against the legal and factual obstacles combined with the complexity of class action practice, it is apparent that the proposed settlement is clearly in the best interest of class members as it approaches the recovery they could recover at trial.

The amount of recovery to the proposed class members is also unquestionably fair, adequate, and reasonable: Mobile Messenger has agreed to refund the amount of all unauthorized mobile content charges paid by the class members.  In addition, Mobile Messenger has agreed to continue and improve its refund policy after having an outside review of its procedures, including offering consumers who call it to unsubscribe to subscriptions for mobile content.  In addition, Mobile Messenger has agreed to remain in compliance with the Mobile Marketing Association's requirements regarding numbers that have been abandoned, which are "recycled" to new wireless subscribers.  Given the strength of this settlement, the parties expect no significant opposition to the settlement by class members.[5]

Finally, the present suit has been pending since December 2007, and along with the coordinated proceedings involving Mobile Messenger, the wireless service providers, and other

---

[5] Given the size of the class and the expansiveness of the notice plan, there is virtually no likelihood that there will be no filed objections.  Class counsel expects that these objections will fall into four categories.  First, there will be "philosophical" objections, i.e. objections made by attorneys, class members, or think tanks who are opposed to class actions and seek to use large settlements as a venue to make political statements.  Second, there will be objections filed by serial objectors, who look to object to large class actions and threaten to hold up settlements as a way to extract payouts.  Third, given that some similar suits have been filed against other defendants by other attorneys, it is possible that these "competing" plaintiffs' firms will be motivated to search for reasons to object to this settlement, again due to motivations separate and apart from the interests of the class.  Finally, there will likely be the "random" objections, filed by pro se objectors or law firms that have not taken the time to understand the settlement and whose objections will reveal that approach.

aggregators have provided an ample foundation upon which to evaluate the proposed settlement. The numerous pending class actions involving alleged unauthorized charges for mobile content have allowed the parties to conduct extensive investigations into the relevant facts and law.  It has allowed the parties to test certain issues through motion practice.  In the end, each party had the necessary information to evaluate the strengths and weaknesses of their cases to mediate effectively.  Armed with this information, the parties were able to reach the present settlement only after in-person settlement discussions, document production, a deposition, and numerous proposed draft agreements as the terms were finalized.  As such, this settlement is well within the range of possible approval and should be preliminarily approved by this Court.

## VII.   THE PROPOSED NOTICE AND FORM OF NOTICE SHOULD BE APPROVED

Pursuant to the Settlement Agreement, Mobile Messenger has agreed to notify the class of this settlement in several ways following a plan devised by the nationally recognized claims administrator Rosenthal and Company. First, Mobile Messenger will publish one-day 1/8th page ads in the New York Daily News, the Los Angeles Times, the Chicago Sun Times, the Philadelphia Inquirer, the Huston Chronicle, the Miami Herald, the Washington Post, the Atlanta Journal-Constitution, the Boston Globe, USA TODAY, and Rolling Stone Magazine within forty-five (45) days after the preliminary approval of this settlement.  Second, the settlement administrator will erect a settlement website that will serve as a replacement for a typical "long-form" notice and will provide links to the Settlement Agreement and provide for the on-line submission of claims.  In addition, the Claims Administrator will spend up to $25,000 in Internet ads promoting the Website Notice.  Finally, the parties are to prepare a joint press release to local, national, and syndicated news organizations discussing the Agreement.  Copies of the

Proposed Notices are attached as Exhibits 2-3 to the Settlement Agreement attached here as Exhibit A.

The proposed notices are neutral in tone and neither promote nor discourage the assertion of claims.  The Notices also provide the settlement class members with a detailed explanation of their options to allow each of them to make an informed decision.  The parties request the Court to approve the form and methods of notice proposed.

## VIII.   PROPOSED PRELIMINARY SCHEDULE

The parties propose the following schedule leading to the Fairness Hearing for final approval of the settlement:

1.    Website Notice Posted by Settlement Administrator:   shortly after entry of Preliminary Approval Order (PAO).

2.    Joint Press Release: shortly after the POA.

3.    Publication of one-day 1/8th page ad space in the New York Daily News, the Los Angeles Times, the Chicago Sun Times, the Philadelphia Inquirer, the Huston Chronicle, the Miami Herald, the Washington Post, the Atlanta Journal-Constitution, the Boston Globe, USA TODAY, and Rolling Stone Magazine: Within 45 days after PAO entered.

4.    Deadline for Opt-outs/Objections:   14 days prior to Final Settlement Hearing Date.

5.    Submission of papers in support of final approval of settlement and in response to objections: 7 days prior to Final Settlement Hearing Date.

6.    Final Fairness Hearing:  Date to be set by the parties and the Court.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that (1) the Court certify the requested settlement class, (2) appoint Lisa Gray as class representative, (3) appoint Class Counsel as set forth above, (4) preliminarily approve the proposed settlement, (5) approve the form and methods of proposed Notice, and (6) that the Court order the issuance of the Notice and all other actions detailed in the schedule proposed above.

Dated: July 15, 2008                    /s/ David P. Healy_____ _____
                                        David P. Healy (0940410)
                                        2846-B Remington Green Cr.
                                        Tallahassee, FL 32308
                                        (850) 222-5400
                                        (850) 222-7339 (fax)
                                        dhealy@nettally.com


Jay Edelson
Myles McGuire
Ryan D. Andrews
KAMBEREDELSON, LLC
53 W. Jackson Blvd., Suite 550
Chicago, IL 60604
Telephone: 312.589.6370
Facsimile: 312.913.9401
*On Behalf of Plaintiffs and the Class*

<u>Certificate of Service</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the

Clerk using the CM/ECF system which will cause a copy to be sent electronically to the

following persons on July 15, 2008:

Charles Wachter
Fowler White Boggs & Banker, P.A.
P.O. Box 1438
Tampa, FL 33601
Attorneys to Defendant Mobile
Messenger Americas, Inc.

                                        _____